HEALY (JOHNSON v.). See Case No. 7,-380.

## Case No. 6,296.

**HEALY et al. v. MOTHERSHED et al.[1]**

District Court, N. D. Mississippi. Dec. Term, 1875.

STATUTE OF LIMITATIONS—SUSPENSION—CIVIL WAR.

[Plaintiff, a citizen of a loyal state during the Civil War, is not entitled to the benefit of both the supension of the statute of limitations by reason of his residence, and the suspension under a state statute (Act Miss. Dec. 31, 1862) of actions of ejectment, but, if not confined to the former suspension, must elect one or the other.]

[This was an action of ejectment by Healy & Whitney against Marcellus Mothershed and J. J. Allen.]

J. W. C. & J. H. Watson, for plaintiffs.

H. A. Barr and L. P. Cooper, for defendants.

HILL, District Judge. The question presented is as to the proper judgment to be rendered upon the following special verdict of the jury: "The jury find from the evidence that the plaintiffs were the legal owners of the land described in the declaration on the 15th day of May, 1856, sold the same to J. W. Matthews, and, to secure the payment of the purchase money, received from him his three promissory notes for the sum of $400.00 each, payable one, two, and three years thereafter, and executed to him a bond for title when the same should be paid, which notes remain unpaid. That the land was then wild and unoccupied, and so remained until the 12th day of January, 1858, when Samuel Matthews sold the same to Allen, the defendant, and put him in possession, who, by himself and tenants, have continued to occupy the same ever since. That Samuel Matthews, at the time he so sold to Allen, had no title or claim, legal or equitable, to the land, but on the 16th day of February, 1868, by an agreement in writing with J. W. Matthews, agreed to exchange other lands for the lands so sold, the deeds of conveyance to be executed at the conv....ence of the parties. Allen, at his purchase, paid one-third of the purchase money in cash, and executed his notes for the remainder, in one and two years, and took from Samuel Matthews his bond for title, Matthews stating that he had a good title. The notes so given for the purchase money were paid at maturity, and on the 12th day of March, 1860, Samuel Matthews executed to Allen a deed of conveyance to the land. Allen had no knowledge of any defect in his title until shortly

---

[1] [Not previously reported.]

before the commencement of this action, and held and claimed the land adversely to all other persons from the time he went into possession under his purchase, as he understood his occupancy. That Allen, by himself and tenants, has placed on said land improvements, of the value to said land amounting to $3,400.00, and that the use and occupation of said land for the past six years has been worth $3,475.00, and that said land is now worth $5,000.00. The jury further find that plaintiffs are now and always have been citizens and residents of the state of Mass. That if, in the judgment of the court, the holding possession of the land, as aforesaid, was an adverse holding, so as to entitle the defendant Allen to the benefit of the statute of limitations of ten years, the jury find the issues in favor of the defendant; but, if not, they find the issues in favor of the plaintiffs, and assess as damages for use and occupation, over and above the value of the improvements aforesaid, the sum of $75.00."

The main question presented is as to the time the possession of Allen became adverse to plaintiffs, so as to entitle him to the benefit of the statute of limitations. It is insisted for defendants that it commenced from the time Allen took possession, in January, 1858, under his purchase; and, by plaintiff's counsel, that it did not commence until the execution of the deed, March 12, 1860. An examination of the authorities and adjudicated cases leaves it a matter of some doubt as to whether or not Allen, having accepted the deed of Samuel Matthews after the written agreement between Samuel Matthews and Joseph Matthews, will not be held as holding subordinate to the title of plaintiffs, until the execution of the deed, after which it is admitted to be an adverse holding to the rights of all others. Had there been no agreement entered into between Samuel and Joseph Matthews, then, Allen holding under his contract with Samuel Matthews up to the execution of his deed, the possession would undoubtedly have been adverse to the plaintiffs' title, from the time he went into possession. The question is, could Samuel Matthews have placed him in a worse condition by a private agreement, of which Allen knew nothing? Although not clearly satisfied, I am inclined to the opinion he could not, and that notwithstanding Allen would be entitled, if necessary, to avail himself of the benefit of this agreement, that he is not compelled to be prejudiced by it when he does not seek its aid; but, under the finding of the jury, I do not deem it necessary to decide this question the one way or the other.

From the date of the deed, 12th day of March, 1860, to the 8th day of May, 1875, when this action was commenced, a period of 15 years, 1 month, and 17 days elapsed, and would constitute a complete bar, unless the deduction of the time the statute of limitations was suspended from this period reduced it to less than ten years. The plaintiffs' counsel insist that the statute was suspended from the 19th of April, 1861, to the 2d of April, 1867. The jury, by their verdict, have found that the plaintiffs are, and always have been, citizens and residents of the state of Massachusetts,—consequently, citizens of one of the loyal states during the late war. The supreme court, in the case of The Protector, 12 Wall. [79 U. S.] 700, settled the time the statutes of limitation became suspended in this state, as against citizens of the loyal states, by means of the war, to be the 19th of April, 1861, and the time when they again became operative to have been the 2d of April, 1866. That the plaintiffs are entitled to this deduction of time, there is no doubt; which a party then a citizen of the state could not have claimed against another citizen of the state. The period which elapsed from the 19th day of April, 1861, to the 2d day of April, 1866, is 4 years, 11 months, and 13 days, which deducted from 15 years, 1 month, and 17 days leaves 10 years, 2 months, and 4 days; so that, under this claim of suspension, more than 10 years elapsed from the execution of the deed to the commencement of the action, after deducting the time the statute was suspended, and consequently the action is barred. But it is insisted the statute was suspended by reason of the act of the legislature, and that plaintiffs are entitled to avail themselves of this act, to avoid the bar set up. Let us examine, and see how that is.

The act approved January 29, 1862 [Laws Miss. 1861–62, p. 235], did not suspend actions of ejectment, but the act approved December 31, 1862 [Laws Miss. 1862–63, p. 96], did. Admitting that plaintiffs are entitled to the benefit of this act, we find that from the 31st of December, 1862, to the 2d of April, 1867, was a period of 4 years, 3 months, and 1 day, which period deducted from 15 years, 1 month, and 17 days, leaves a period of 10 years, 10 months, and 16 days, —more than a sufficient time to complete the bar. But it is insisted that plaintiffs are entitled to avail themselves of both these suspensions, commencing with the suspensions by reason of the residence of the parties, and the existence of the war, and ending with the statute of limitations. I am satisfied that this position cannot be maintained, but that plaintiffs must elect one or the other, if not confined to the rule laid down by the supreme court for their benefit, and, whether relying upon one or the other, the deduction falls short of reducing the time the statute runs to less than 10 years; consequently, the bar by the statute must be held complete, and the judgment upon the special finding of the jury be for the defendants. This, in my opinion, is not only the law, but the equity, of the case. The proof shows that, had plaintiffs proceeded in proper time, they would have collected the purchase money from Joseph Matthews, and thus have avoid-

ed any difficulty in Allen's title, and if they had commenced their action of ejectment in a reasonable time, and ejected Allen, he could have recovered from Samuel Matthews, his vendor, the purchase money paid by him, with interest; but, by delaying until Samuel Matthews' insolvency and death, were Allen now ejected, he would be left without remedy.